UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARTIS SPECIALTY INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AQUA SCIENCES ENGINEERS, INC.,<br><br>　　　　Defendant. | Case No. 11-cv-03669-JST<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 100 |

Before the Court is Defendant Aqua Sciences Engineers, Inc.'s Motion for Summary Judgment against Plaintiff Chartis Specialty Insurance Co. Mot., ECF No. 100. For the reasons discussed below, the Court will deny the motion.

## I.　LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). The Court must draw all reasonable inferences in the light most favorable to the non-moving party. Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010). However, unsupported conjecture or conclusory statements do not create a genuine dispute as to material fact and will not defeat summary judgment. Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

Where the moving party bears the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the moving party

would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party does not satisfy its initial burden, then the non-moving party has no obligation to produce anything, and summary judgment must be denied. If, however, the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. Id. at 1102–03

At summary judgment, the Court applies the same evidentiary standard of proof that it would apply at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The Court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The Court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elect. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Affidavits and declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party fails to support an assertion of fact, the

2

1  Court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact
2  undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting
3  materials — including the facts considered undisputed — show that the movant is entitled to it; or
4  (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). "The choice among possible orders
5  should be designed to encourage proper presentation of the record." Adv. Cttee. Notes to 2010
6  Amendments to Fed. R. Civ. P. 56(e). However, "[w]here the evidentiary matter in support of the
7  motion does not establish the absence of a genuine issue, summary judgment must be denied even
8  if no opposing evidentiary matter is presented." Adv. Cttee. Notes to 1963 Amendments to Fed.
9  R. Civ. P. 56(e).

## II. UNDISPUTED FACTS

Plaintiff Chartis Specialty Insurance Co. (f/k/a American International Specialty Lines Insurance Company) ("Chartis") filed its operative Second Amended Complaint on November 16, 2012, as subrogee for Lowe's Companies, Inc. ("Lowe's") against Defendant Aqua Sciences Engineers, Inc. Chartis claims damages arising from an environmental site assessment prepared by Aqua Sciences for Lowe's in 2008. ECF No. 66 ("SAC") ¶¶ 6–7, 37–42. Following the assessment and the purchase of the subject property, Lowe's discovered soil contamination resulting in alleged cleanup costs of $1,050,103, which sum Chartis now seeks, as subrogee for Lowe's, from Aqua Sciences. Id. ¶¶ 21–23.

In anticipation of purchasing real property located at 1923–2001 Arnold Industrial Way, Concord, California, Lowe's hired Aqua Sciences to perform a "Phase I Environmental Site Assessment" and a "Soil and Groundwater Assessment." Id. ¶ 6–7. Lowe's authorized Aqua Sciences to proceed with the assessments on March 5, 2008. Mot., Ex. A, ECF No. 100-1 p. 5; Ex. B, ECF No. 100-2 p. 7. Aqua Sciences delivered its soil and groundwater "Phase II" assessment to Lowe's on March 20, 2008, and its initial Phase I assessment on March 21, 2008. Id. ¶¶ 9, 11; Mot., Ex. C, ECF No. 100-3 ("Phase I Report"); Ex. D, ECF No. 100-4 ("Phase II Report"). The final Phase I Report was delivered to Lowe's on April 4, 2008. Phase I Report p. 1.

The objective of the Phase I assessment was "to identify, to the extent feasible, recognized environmental conditions (RECs) in connection with the subject property(s)." Phase I Report

3

§ 2.1. The purpose of the Phase II assessment was "to determine if subsurface soil and/or groundwater pollution exists at the property in (a) areas where former underground storage tanks (USTs) were located, (b) areas of the site historically used for vehicle and equipment storage, and (3) areas where poor handling of drummed oils and paints have resulted in stained surfaces." Phase II Report § 1.0. The Phase II Report states: "[Aqua Sciences] completed this work at the request of a prospective purchaser of the property." Id. Roger Bernstein was Lowe's Director of Site Development at the time the property was being developed. Mot., Ex. E, Bernstein Depo. p. 9:4. Bernstein was the Lowe's representative who signed the contracts for the two assessments. Id. p. 21:8; 45:12. David Allen was the principal for, and signed the contracts for Aqua Sciences. Mot., Ex. A, ECF No. 100-1 p. 5; Ex. B, ECF No. 100-2 p. 7.

Lowe's had been a tenant on the subject property, and entered into a contract to purchase the property in February 2008, prior to hiring Aqua Sciences. Maddox Depo. p. 16–18. The parties dispute, as discussed more fully below, what obligations Lowe's had under the purchase contract, but it is undisputed that a "due diligence" period following February 2008 provided Lowe's the opportunity to have the site inspected by Aqua Sciences, and to withdraw from its agreement to purchase the property.

The site had a history of environmental contamination. The Phase I Report discusses that history in detail, much of which included assessments and remedial work overseen by Aqua Sciences under the site's previous owners. Phase I Report §§ 2.2–2.5. See also Phase II Report § 4.8. The Second Amended Complaint itself alleges that Lowe's was aware of the historical industrial use of the site, and of "various instances of contamination." SAC ¶ 6.

In addition to preparing the Phase I and II assessments, Aqua Sciences also prepared a soil management plan for Lowe's, which addressed how remediation efforts would proceed, should soil contamination be discovered in the future. Maddox Depo. pp. 24:13–25:7. The soil management plan was required for governmental approval of the project. Id. p. 24:10.

Lowe's also sought a "No Further Action" letter from the California Regional Water Quality Control Board, which the parties agree is a letter from that regulatory agency stating that the property meets certain environmental requirements, though it does not guarantee that

4

remediation will not be required in the future. See Maddox Depo. p. 20:2–6.

All of Aqua Sciences' invoices were paid in full. Following receipt of the final Phase I Report, Lowe's waived the "due diligence" period and closed escrow. Allen Depo. pp. 53:11–54:5; 55:22–56:2. The Second Amended Complaint alleges, and Defendant does not dispute, that in May 2009, in the process of redevelopment of the property, contaminated soil was discovered three feet below the ground surface during excavation. SAC ¶¶ 21, 22, Exs. E, F. Lowe's submitted a claim for the cleanup costs to Chartis, and Chartis paid Lowe's $1,050,103. Id. ¶ 23. Lowe's had paid Aqua Sciences $59,245 for the Phase I and II assessments.

### III.  EVIDENTIARY OBJECTIONS

Aqua Sciences objects to exhibits 5, 7–10, 14, 16, 24, and 26 to the declaration of Stephanie Montgomery on the grounds that the declarant lacks personal knowledge sufficient to authenticate and introduce those documents, and to exhibits 12, 13, 17–23, 25, 27, 29, and 30 as having been offered without any authentication. Aqua Sciences further objects to each of those exhibits, "to the extent applicable," on hearsay grounds. ECF No. 106 pp. 12–13.

Rule 56(c)(4) provides: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). An affidavit's failure to be set forth on personal knowledge renders the facts within the declaration inadmissible. Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001) (abuse of discretion to consider fact set forth in affidavit not made on personal knowledge at summary judgment).

However, "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." Block, 253 F.3d at 418–19 (citing Celotex, 477 U.S. at 324). The Court's focus at summary judgment is not on the form of the evidence submitted, but on whether its content would be admissible. For example, hearsay evidence attached to an affidavit may be considered at summary judgment if the out-of-court declarant could present the evidence through direct, admissible testimony at trial. Fraser v. Goodale, 342 F.3d 1032, 1036

5

1  (9th Cir. 2003) (citing Hughes v. United States, 953 F.2d 531, 543 (9th Cir. 1992) (because
2  contents of diary were recitations of events within declarant's personal knowledge, reliance on
3  diary at summary judgment was permissible even if diary itself was inadmissible at trial).

4  "[U]nauthenticated documents cannot be considered in a motion for summary judgment"
5  because "authentication is a 'condition precedent to admissibility.'" Orr v. Bank of Am., NT &
6  SA, 285 F.3d 764, 773 (9th Cir. 2002) (quoting Fed. R. Evid. 901(a)). However, unlike facts set
7  forth in affidavits themselves, documents submitted at summary judgment may be authenticated
8  by any manner authorized by the Federal Rules of Evidence, not just through personal knowledge.
9  See Las Vegas Sands, LLC v. Nehme, 632 F3d 526, 532–533 (9th Cir. 2011). "Once the trial
10 judge determines that there is *prima facie* evidence of genuineness, the evidence is admitted, and
11 the trier of fact makes its own determination of the evidence's authenticity and weight." Orr, 285
12 F.3d at 773 n. 6.

13 "If a party fails to properly support an assertion of fact or fails to properly address another
14 party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to
15 properly support or address the fact; (2) consider the fact undisputed for purposes of the motion;
16 (3) grant summary judgment if the motion and supporting materials — including the facts
17 considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate
18 order." Fed. R. Civ. P. 56(e)(1)–(4).

19 Chartis' opposition attaches without comment, declaration, or attempt at authentication,
20 exhibits 3, 12, 13, 17–23, 25, 27, 29, and 30. Of those, several bear a stamp indicating they were
21 exhibits to depositions conducted in this case. Nothing in Plaintiff's opposition, however, serves
22 as "evidence sufficient to support a finding that the matter in question is what its proponent
23 claims." Orr, 285 F.3d at 773.

24 The declaration of Stephanie Montgomery states that she is employed as an analyst in the
25 Environmental Specialty Claims Department at Chartis. Montgomery Decl., ECF No. 101-4 ¶ 2.
26 According to the declaration, Montgomery handled[1] the Lowe's request for coverage for

---

[1] Aqua Sciences misreads the phrase "in 2009 and 2010" in paragraph 2 at line 11 of the Montgomery declaration as asserting that Montgomery handled the claim in 2009 and 2010. That

1 contamination at the subject property. She states: "I have reviewed and am familiar with the claim
2 materials relevant to the above-referenced matter, including the materials cited herein, and can
3 attest to their authenticity as part of those materials." Id. ¶ 2.

4       The Montgomery declaration suffices only to authenticate the documents submitted with
5 the declaration as having been found in the relevant claim file at Chartis, but not for their
6 authenticity as having been authored by any particular party, or for the facts contained therein, as
7 Montgomery does not have personal knowledge of the facts and did not author the documents or
8 act as their author's custodian. See Orr, 285 F.3d at 773. Because the declaration does not
9 provide any facts to authenticate exhibits 5, 7–10, 14, 16, 24, and 26, either through personal
10 knowledge or alternative means, it fails to satisfy Federal Rule of Evidence 901.

11       At the hearing on Defendant's motion, the Court expressed these concerns and, pursuant to
12 Rule 56(c)(1), granted Plaintiff an opportunity to support the facts contained in its exhibits
13 properly. See ECF No. 107 (Minute Order). Plaintiff submitted two supplemental declarations.
14 Aqua Sciences submitted a "declaration in support of evidentiary objections."

15       First, Plaintiff submitted the declaration of Thomas E. Maddox, Vice President and
16 Assistant General Counsel at Lowe's since January 2008. ECF No. 111 ¶ 2. The Maddox
17 declaration states: "I have knowledge of the real estate transactions and the environmental issues
18 associated with, as well as the construction/redevelopment of, the Lowe's Home Improvement
19 Warehouse site located at 1923 to 2001 Arnold Industrial Way, Concord, California." Id.
20 Maddox authenticated: exhibit 14 as a true and correct copy of the agreement to purchase the
21 subject property executed by Lowe's; exhibit 16 as a true and correct copy of the Phase I report
22 requirements Lowe's gave to Aqua Sciences; and exhibit 24 as a true and correct copy of the "Soil
23 and Groundwater Management Plan" prepared for Lowe's by Aqua Sciences, dated October 6,
24 2008, and, "upon information and belief," submitted by Aqua Sciences to the California Regional
25 Water Quality Control Board in San Francisco. Id. ¶¶ 3–5.

---

27 phrase refers to "contamination discovered at [the subject property] in 2009 and 2010," not to the time period in which she handled the claim. Her statement in deposition that she handled the claim "since January 2010" therefore does not conflict with her declaration. See Montgomery
28 Depo., p. 9:14–16.

1    Second, Plaintiff submitted the supplemental declaration of Thomas Kilgore, counsel for
2    Plaintiff. ECF No. 110 ¶ 2. That declaration authenticates: exhibits 3, 5, 12, 13, 17–20, 22, 25 as
3    exhibits to the May 9, 2013 deposition of David Allen, Aqua Sciences' corporate designee; and
4    exhibits 21, 27, 29, and 30 as exhibits to the August 22, 2012 deposition of Roger Bernstein.

5    Aqua Sciences renews its objections as to every exhibit except exhibits 5, 13, and 18. ECF
6    No. 113. First, Aqua Sciences renews its objection to the exhibits attached to the Montgomery
7    declaration (except for exhibit 5). Of those, Plaintiff has attempted to authenticate only exhibits
8    14, 16, and 24.

9    Aqua Sciences objects to exhibit 14 because, as the Maddox declaration states, it does not
10   include any of the exhibits attached to the purchase agreement. That objection is overruled.

11   Aqua Sciences objects to exhibits 16 and 24 as insufficiently authenticated because
12   Maddox declared "upon information and belief" that the Phase I requirements (exhibit 16) were
13   provided to Aqua Sciences, and that Aqua Sciences submitted exhibit 24 to the water quality
14   control board. Those objections are also overruled. Plaintiff has established the *prima facie*
15   genuineness of the documents, as Maddox declares they are true and correct copies of the
16   documents they purport to be — a fact within Maddox's personal knowledge — and the Court is
17   free to consider their authenticity and weight. Orr, 285 F.3d at 773 n. 6.

18   Plaintiff does not attempt to authenticate the remaining exhibits attached to the
19   Montgomery declaration — exhibits 7–10 and 26 — and the Court therefore does not consider
20   them in deciding Defendant's motion.

21   Aqua Sciences also renews its blanket hearsay objection to exhibits 12, 17, 21, 22, 25, 27,
22   29, and 30, all of which were exhibits to the Allen and Bernstein depositions. Those objections
23   are overruled.

24   Aqua Sciences objects to exhibit 19 on the grounds that Allen did not authenticate it.
25   Exhibit 19, which is figure 7 to the Phase I report Aqua Sciences itself prepared, was, in fact,
26   authenticated by Allen on page 105 of his deposition, when he authenticated the Phase I Report.
27   The objection is overruled.

28   Aqua Sciences makes the same objection with respect to exhibits 27, 29, and 30. Those

objections are also overruled. The documents, each of which were e-mail messages exchanged between Allen and Bernstein, and each of which was introduced at the Bernstein deposition by Aqua Sciences' own counsel, are adequately authenticated for purposes of summary judgment.

Finally, Aqua Sciences objects to the Maddox declaration as violative of this Court's July 25, 2013 Minute Order granting Plaintiff leave to file "<u>a</u> declaration that addresses and attempts to cure any objection that was made to any exhibit," (emphasis added) arguing that the Court gave leave only for <u>one</u> declaration, not two. The objection is overruled. Aqua Sciences also argues that Maddox's declaration attempts to establish additional facts because it establishes his position at Lowe's, the scope of his personal knowledge, and the knowledge he has about the documents he authenticates necessary to authenticate them. That objection is also overruled.

In summary, the Court sustains Aqua Sciences' objections with respect to exhibits 7–10 and 26, and overrules them as to all others.

## IV. ANALYSIS

Aqua Sciences moves for summary judgment on each of Chartis' three causes of action for breach of contract, negligence, and subrogation.

### A. Breach of Contract

Aqua Sciences moves for summary judgment on Chartis' breach of contract claim on the grounds that: (1) Lowe's accepted Aqua Sciences' performance, thereby extinguishing Aqua Sciences' obligations under the contract, (2) there is no evidence of breach; and (3) there is no evidence of damages. For each of Chartis' claims, it stands in the shoes of Lowe's, its insured, and succeeds in its rights and remedies. <u>Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.</u>, 710 F.3d 946, 957 (9th Cir. 2013).

#### 1. Discharge by Performance

Aqua Sciences argues that it has an absolute defense to Chartis' breach of contract claim pursuant to California Civil Code § 1473, which states: "Full performance of an obligation, by the party whose duty it is to perform it, or by any other person on his behalf, and with his assent, if accepted by the creditor, extinguishes it." According to Aqua Sciences, Lowe's accepted Aqua Sciences' performance by paying it in full for the Phase I and Phase II Reports, "extinguishing all

9

obligations [Aqua Sciences] owed to Lowe's under the contracts." ECF No. 100 p. 18.

Aqua Sciences substantially over-reads section 1473, which merely restates the fundamental principle that full performance under a contact discharges the obligation. See generally 14A Cal. Jur. 3d Contracts § 323 (discussing performance generally). A creditor waives her right to bring a claim for breach of contract only if she accepts the obligor's performance with knowledge of the defects in it. See 1 Witkin, Summary of Cal. Law (Contracts) § 857 at 944 (10th ed., 2005). On the other hand, where the creditor is unaware of the defects in the obligor's performance, her acceptance of the obligor's performance does not operate as a waiver of her claim for breach of contract. See, e.g., Sparling v. Housman, 96 Cal. App. 2d 159, 163, 214 P.2d 837, 839 (1950); Banducci v. Frank T. Hickey, Inc., 93 Cal. App. 2d 658, 662, 209 P.2d 398, 400 (1949); 14A Cal. Jur. 3d Contracts § 347 ("The departures from the contract are not waived, and the party accepting is not precluded from claiming damages, where the defects are not apparent"). Aqua Sciences has not met its burden of establishing as a matter of law that Lowe's was aware of the alleged defects in Aqua Sciences' performance, and so Aqua Sciences is not entitled to summary judgment on this theory.

Because Aqua Sciences has not established as a matter of law that Lowe's was aware of the alleged defects in the reports, it is not entitled to summary judgment on that basis.

### 2. Evidence of Breach

The elements of a breach of contract action are: (1) a contract, (2) the plaintiff's performance or excuse for non-performance, (3) breach, and (4) damages. Reichert v. General Ins. Co., 68 Cal. 2d 822 (Cal. 1968). The Second Amended Complaint asserts that Aqua Sciences breached the contracts for the Phase I and II assessments by failing to execute the contracts "in a responsible . . . fashion consistent with the needs and purposes of the project." SAC ¶ 27. In particular, Chartis alleges that Defendant failed to identify the presence of "hazardous substances or petroleum products" on the property. Id. According to Chartis, Aqua Sciences "represented to Lowe's that 'the property is suitable for commercial redevelopment,' despite the fact that the Site was contaminated." Id. ¶ 28.

Aqua Sciences argues that Chartis cannot establish the element of breach because nothing

in the record establishes that Aqua Sciences failed fully to perform under the contracts.

Aqua Sciences first points to testimony by Roger Bernstein, the Director of Site Development, and Thomas Maddox, a Lowe's Vice President and Assistant General Counsel, in which they stated that Aqua Sciences was paid in full because it complied with the terms of the contract, and that they were not aware of any breach. See Bernstein Depo. p. 46:15–18 (Q: "[Y]ou never had cause to find that the terms of the contract had not been met?" Bernstein: "I don't believe I did."); Maddox Depo. p. 22:13–16 (Q: "Have you ever communicated to any third party outside of Lowe's that ASE breached its contracts to Lowe's?" Maddox: "No, I have not.").

This testimony is not helpful to Chartis. It is undisputed that the contamination underlying this suit was discovered in May 2009. It is therefore not surprising that Bernstein and Maddox did not know at the time the invoice was paid whether Aqua Sciences had negligently performed the contracts, and their statements do not demonstrate that Aqua Sciences complied with its obligations under the contracts.

Second, Aqua Sciences relies on the testimony of Chartis' expert, Timothy Wood, who was asked whether he believed Aqua Sciences committed professional malpractice. He responded "I have not made that opinion." Wood Depo. p. 5:18–20. The fact that Chartis' expert did not opine that Aqua Sciences "committed professional malpractice" does not mean that Aqua Sciences performed its contract in all material respects, or that Wood thought that Aqua Sciences' performance was within industry norms. In fact, as set forth below, Wood opined that Aqua Sciences did not adequately disclose its knowledge of site conditions in its reports to Lowe's.

Aqua Sciences also claims that Wood testified repeatedly that he had no criticism of several documents prepared by Aqua Sciences. That argument exaggerates Wood's testimony. Wood opined as follows as to the "overall work done by [Aqua Sciences] on this project": "I certainly have an opinion about how [Aqua Sciences'] long-term historical involvement, knowledge of the site conditions and contemplation of what was coming, and that *that was not accurately portrayed in the Phase I.*" Reply, ECF No. 106, Ex. C ("Wood Depo. II") p. 49:6–16 (emphasis added). Taken as a whole, the excerpts of Wood's deposition submitted by the parties do not establish that Aqua Sciences satisfied its contract obligations; rather, they give rise to a

11

1    dispute of material fact over whether Aqua Sciences' work was satisfactory.

2    Third, Aqua Sciences argues that Lowe's awareness of prior environmental contamination precludes Chartis' breach of contract claim.  See, e.g., Maddox Depo. p. 19:4–23 (testifying that Lowe's was aware of prior contamination).  Similarly, Aqua Sciences argues that Lowe's was aware, prior to the close of escrow, of the "potential" that the site would require remediation.  See, e.g., Bernstein Depo. 52:11–14 (Q: "Lowe's was certainly aware of the potential that there was contaminated soil on this site at the time of purchase, correct?"  Bernstein: "Yes.").  These facts are unhelpful to Aqua Sciences.  Both sides acknowledge that Lowe's was *aware of the potential* for contamination; it paid Aqua Sciences almost $60,000 to figure out whether there *in fact* was contamination.

Chartis has also submitted evidence from which a reasonable trier of fact could find that Aqua Sciences knew that the intended future use of the site was commercial development.  Allen Depo. p. 91:1–24; Phase I Report § 2.3 (a "significant assumption" was that the primary reason Lowe's wanted the Phase I assessment was to "qualify for an LLP to CERCLA liability with regard to future ownership and use of" the site).  As set forth above, the basis of Chartis' breach of contract claim is that Aqua Sciences' advice on this point was in error.  See, e.g., Phase I Report § 9.0 (the historical and recognized environmental conditions at the site "no longer negatively impact[ed] the subject site and [did] not warrant any further assessment activities"); id. § 10.0 (the historical environmental conditions and other "*de minimis conditions*" Aqua Sciences discovered at the site "are not considered to negatively impact the property") (original emphasis); Phase II Report § 7.0 ("the property is suitable for commercial redevelopment").

### 3. Evidence of Damages

Aqua Sciences argues that Chartis cannot establish the damages element of its contract claim for two reasons.

First, Defendant argues that Lowe's was "fully aware of the potential for environmental contamination when it purchased and subsequently closed on the property."  Mot., p. 16.  That argument is addressed above in the context of breach.  Aqua Sciences has only presented evidence that Lowe's was area of the *potential* for contamination.  There is no evidence that Lowe's was

United States District Court
Northern District of California

1 aware of the specific contamination that, Chartis claims, Aqua Sciences was or should have been
2 aware of when it issued its reports.

3 Aqua Sciences also argues that because Lowe's had already signed a purchase agreement
4 when it hired Aqua Sciences, the Phase I and II reports could not have affected Lowe's decision to
5 buy the property, and Lowe's could not have relied on the reports in deciding to buy it.
6 Consequently, argues Aqua Sciences, any resultant damage could not have been caused by Aqua
7 Sciences.

8 The Court is not persuaded. There remains a genuine issue of material fact with respect to
9 whether Lowe's relied on the reports in deciding to close on the property. David Allen testified
10 that Aqua Sciences authorized Lowe's to rely on the reports, and that he assumed Lowe's did
11 because "[t]hat's why they asked us to prepare it." Allen Depo., pp. 43:21–44:3. Allen was also
12 aware at the time that Lowe's was not obligated to close on the property, and that the reports were
13 prepared during a "due diligence" period that Lowe's waived after receiving the reports. Id. pp.
14 53:11–54:5; 55:22–56:2. And the deposition testimony submitted by Chartis shows that there is at
15 least a triable issue of material fact regarding Lowe's reliance on Aqua Sciences' reports before
16 consummating its purchase of the site. Bernstein Depo., pp. 25:10–13 ("But what I was relying on
17 him to do was review all the previous reports, summarize them and bring to my attention any
18 issues that he thought we would have to deal with moving forward."); id., at 110:6–8 ("And all the
19 documents [including the Phase I and II reports] needed to be reviewed and that decision needed
20 to be made prior to the end of the due diligence period."); id., at 110:23–111:1("Lowe's relied on
21 ASE, but it was just all of ASE's reports and communication from the Regional Water Quality
22 Control Board with respect to the environmental issues.").

23 Finally, Aqua Sciences argues that Lowe's paid a lower price than it otherwise would have
24 paid because of the potential for contamination on the property. The sole piece of evidence Aqua
25 Sciences relies upon is Bernstein's deposition, in which, according to Aqua Sciences, Bernstein
26 testified that Lowe's purchased the property for less than the fair market value because of the
27 potential for contamination. Mot. p. 19:14–16. But that is not what Bernstein said. At his
28

United States District Court
Northern District of California

1 deposition, he was presented with a questionnaire that he purportedly filled out[2] and gave to Aqua
2 Sciences in which he answered "yes" to two contradictory questions. The first "yes" indicated that
3 the purchase price reflected the fair market value of the property; the second "yes" indicated that
4 Lowe's "considered whether the lower purchase price is because contamination is known or
5 believed to be present at the property." Bernstein Depo. pp. 88:15–89:5. As Bernstein explained
6 in his deposition, however, he was not involved in analyzing the purchase of, or valuing, the
7 property. Bernstein Depo. p. 89:8–10. Again, this only indicates at best that there is a triable
8 issue of material fact.

### B. Negligence

Aqua Sciences' motion for summary judgment on Chartis' negligence claim suffers from the same flaws as those discussed above. To establish its claim for professional negligence, Chartis must establish (1) duty, (2) breach, (3) causation, and (4) damages. Ileto v. Glock, Inc., 349 F.3d 1191, 1203 (9th Cir. 2003). Aqua Sciences argues that Plaintiff cannot establish breach, causation, or damages.[3]

On the element of breach of a duty of care, Chartis has submitted sufficient evidence to find that there is a triable issue of material fact. For example, Chartis' expert witness, Roger Wood, opined that Aqua Sciences' Phase I report omitted information known by Aqua Sciences that it should have disclosed. This testimony is adequate to permit a reasonable trier of fact to conclude that Aqua Sciences breached its duty to Lowe's. See Wood Depo., pp. 21:21–24:18, 42:24-43:6.[4]

---

[2] Aqua Sciences did not submit the questionnaire, which was made an exhibit at Bernstein's deposition by Defendant. Plaintiff did submit it, but without authenticating it, and Aqua Sciences objected to the Court's consideration of it. As discussed above, although the Court has considered the deposition testimony, it has not considered the exhibit.

[3] In its reply, Aqua Sciences argues, for the first time, that Chartis has inadequately defined the duty it owed Lowe's in preparing the report, suggesting that it may not have owed Lowe's a duty at all (in its motion, Aqua Sciences identified Chartis' claim as one for professional negligence, without further comment or contention). "It is inappropriate to consider arguments raised for the first time in a reply brief." Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006). The Court declines to consider the argument.

[4] Neither party submitted Wood's expert report, which made his deposition testimony harder to follow. But it was adequate to establish this point.

14

Addressing causation and damages, Aqua Sciences observes that "[t]he analysis of this issue is very similar to that regarding contract damages." Mot., p. 24:6. So is the outcome. For now, it is sufficient to find that Chartis has submitted enough evidence to show some damages from Aqua Sciences' alleged negligence. The correct measure of those damages is a matter best left for trial.

### C. Subrogation

Plaintiff does not contest Defendant's motion for summary judgment on its subrogation claim, as it provides for no more and no less than the rights of Chartis' insured. Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 957 (9th Cir. 2013). It is a "common law doctrine based in equity that permits an insurer to take the place of the insured to pursue recovery from third-party tortfeasors responsible for the insured's loss." Id. However, Defendant fails to point to any California authority holding that subrogation is not an independent cause of action. The California case Defendant does rely upon expressly discusses equitable subrogation as an independent cause of action, and enumerates its elements. Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1292 (1998). The Court therefore cannot grant summary judgment on that claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby DENIED.

**IT IS SO ORDERED**.

Dated: August 26, 2013

_____
JON S. TIGAR
United States District Judge