UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARTIS SPECIALTY INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AQUA SCIENCES ENGINEERS, INC.,<br><br>　　　　　Defendant. | Case No.  11-cv-03669-JST<br><br>**ORDER GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW** |

Now before the Court is Defendant Aqua Sciences Engineers, Inc.'s ("ASE") motion for judgment as a matter of law pursuant to Rule 50(b).  The Court will grant the motion.

## I.　BACKGROUND

The background of this case is set out in more detail in the Court's Order Denying Summary Judgment, ECF No. 117, Chartis Specialty Ins. Co. v. Aqua Sciences Engineers, Inc., No. 11-cv-03669-JST, 2013 WL 4647288 (N.D. Cal. Aug. 29, 2013).

Plaintiff Chartis Specialty Insurance Co. (f/k/a American International Specialty Lines Insurance Company) ("Chartis") filed its operative Second Amended Complaint on November 16, 2012, as subrogee for Lowe's Companies, Inc. ("Lowe's") against ASE.  Chartis asserts claims for breach of contract and professional negligence.

The case arises from Lowe's purchase of a parcel of real property located at 1923–2001 Arnold Industrial Way, Concord, California in 2008.  During the purchase transaction, as part of its due diligence on the property, Lowe's hired ASE to perform a "Phase I Environmental Site Assessment" and a "Soil and Groundwater Assessment."  ASE delivered its soil and groundwater "Phase II" assessment to Lowe's on March 20, 2008, and its initial Phase I assessment on March 21, 2008.  The final Phase I Report was delivered to Lowe's on April 4, 2008.  Lowe's waived its

1  due diligence rights shortly after receiving the Phase I report, and consummated its purchase of the
2  property.
3  After the purchase closed, Lowe's discovered significant soil contamination at the Arnold
4  Way property, resulting in cleanup costs of $1,050,103. Lowe's then tendered a claim for its
5  clean-up costs to its insurer, Chartis. Chartis sued ASE as Lowe's subrogee, on the theory that
6  Lowe's failure to warn of the contamination in its Phase I assessment breached ASE's contract
7  with Lowe's and constituted professional negligence.
8  At trial, Defendant argued to the jury that Chartis had no evidence that ASE's alleged
9  failures had caused any damage to Lowe's, because (a) ASE had not caused the soil
10 contamination; (b) there was no evidence that Lowe's would not have consummated the
11 transaction if it had known about the contamination, and (c) there was no evidence that Lowe's
12 would have paid (or been able to pay) any less for the property had it known about the
13 contamination. In short, there was no evidence that Lowe's would have done anything differently.
14 In addition to making these arguments to the jury, ASE made them in two motions for
15 judgment under Rule 50(a) during the trial, both of which the court denied without prejudice.
16 "Under Rule 50, a party must make a Rule 50(a) motion for judgment as a matter of law before a
17 case is submitted to the jury. If the judge denies or defers ruling on the motion, and if the jury
18 then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)."
19 E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009). A party may also renew
20 its motion if the court declares a mistrial because of jury deadlock. Rodriguez v. Cnty. of
21 Stanislaus, 799 F. Supp. 2d 1131, 1139 (E.D. Cal. 2011).
22 ASE now renews its motion.

## II.   LEGAL STANDARD

24 Federal Rule of Civil Procedure 50(a) provides: "If a party has been fully heard on an issue
25 during a jury trial and the court finds that a reasonable jury would not have a legally sufficient
26 evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the
27 party; and (B) grant a motion for judgment as a matter of law against the party on a claim or
28 defense that, under the controlling law, can be maintained or defeated only with a favorable

finding on that issue."

"A directed verdict is proper when the evidence permits only one reasonable conclusion. The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (citing Zamalloa v. Hart, 31 F.3d 911, 913 (9th Cir. 1994)). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." Go Daddy Software, 581 F.3d at 961 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

"[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–251 (1986)). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. Anderson, 477 U.S. at 248–49.

## III.   ANALYSIS

ASE moves for judgment as a matter of law based on Chartis' failure to present evidence establishing that, had Lowe's become aware of the alleged defects contained in the Phase I assessment, Lowe's would not have purchased the subject property, negotiated a lower sales price, or otherwise changed its position financially. Stated differently, ASE argues that Chartis has failed to present any evidence establishing that Lowe's relied, to its detriment, on the findings in the Phase I assessment, or that the alleged damages were proximately caused by ASE.

California Civil Code § 3300 provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." See also Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. R. 145. (1854) (establishing modern rule of

1  contract damages). "As in any contract action, '[i]t is essential to establish a causal connection
2  between the breach and the damages sought.'" Thompson Pac. Constr., Inc. v. City of Sunnyvale,
3  155 Cal. App. 4th 525, 541 (2007) (quoting 1 Witkin Summary of Cal. Law § 870 (10th ed.
4  2005)).

5  Similarly, the measure of damages in tort claims "is the amount which will compensate for
6  all the detriment proximately caused thereby . . . ." Cal. Civ. Code § 3333. The element of
7  causation limits tort actions to those for damages proximately caused by the defendant. "If the
8  accident would have happened anyway, whether the defendant was negligent or not, then his or
9  her negligence was not a cause in fact, and of course cannot be the legal or responsible cause." 6
10 Witkin, Summary § 1185 (10th ed. 2005). "A defendant's conduct is a cause in fact of the
11 plaintiff's injury if it was a substantial factor in bringing about the injury." Gordon v. Havasu
12 Palms, Inc., 93 Cal. App. 4th 244, 252 (2001). See also Restatement (Second) of Torts § 432
13 (1965) (except in unrelated exception, "the actor's negligent conduct is not a substantial factor in
14 bringing about harm to another if the harm would have been sustained even if the actor had not
15 been negligent").

16 Chartis' causation theory is that, without ASE's alleged failure to identify the soils
17 contamination at the Arnold Way property, Lowe's would not have incurred the costs to clean it
18 up, because Lowe's either (a) would not have purchased the property, (b) would have negotiated a
19 lower purchase price, or (c) would have extended its due diligence period for further assessment.

20 The evidence at trial was insufficient to sustain any of these alleged damages. At trial,
21 Lowe's assistant general counsel Tom Maddox testified that the agreement authorized Lowe's to
22 rely on the Phase I assessment, and that Lowe's "certainly looked at [the Phase I opinion that there
23 were no recognized environmental conditions that negatively impacted the subject site] as
24 something important that we would rely on." Trial Tr., Vol. 3 at 98:9–10 (Jan. 15, 2014). But
25 Maddox did not testify *how* Lowe's relied, and specifically did not testify as to the effect of that
26 reliance — that is, what Lowe's relied on the Phase I report *to do*.

27 Similarly, former Lowe's employee and the project manager of the development at the
28 subject site, Roger Bernstein testified at trial as follows:

4

> Q. . . . . Do you know of any investigation or analysis done by Lowe's after the store was built that Lowe's would have made any decision regarding the transaction differently, if it had known in advance the precise amount of cleanup costs that would be incurred?
>
> A. I'm not aware of. No.
>
> Q. And you're not aware of anyone at Lowe's making a determination that the decisions would have been made differently. Is that correct?
>
> A. Correct.

Trial Tr., Vol. 9 at 91:21–92:5 (Jan. 28, 2014).

ASE made three Rule 50(a) motions during the trial. The Court denied the first motion without prejudice because Plaintiff had not rested. Trial Tr., Vol. 3 at 161–64 (Jan. 15, 2014). Plaintiff again moved at the close of Plaintiff's evidence, but the Court deferred ruling on that motion because Plaintiff argued that it would elicit testimony from Roger Bernstein during Defendant's case that would result in denial of the motion. At the time it agreed to defer ruling on the motion, the Court took the opportunity to identify the defects in Plaintiff's proof:

> If the only issue were "Did Lowe's get the report it bargained for?" or "Did this report meet the standard of professional care?" there's no question in my mind this motion for directed verdict would have to be denied. There's no question.
>
> But the oil was in the ground, anyway. The oil was in the ground, anyway. Lowe's paid $26 million for this dirt. And I don't understand anybody from Lowe's to say we would have done anything differently.
>
> With regard to Exhibit 54,[1] obviously, they were surprised. I think a fair reading of that e-mail is that Lowe's was surprised, and they didn't factor in these clean-up costs; but unless there's evidence that they wouldn't have been willing to bear them if they'd known, it's

---

[1] Trial Exhibit 54 is an e-mail from Roger Bernstein to Kevin Brown, a geologist at the California Regional Water Quality Control Board for the San Francisco Bay Area Region. In the message, Bernstein states in relevant part: "As you know, we did not cause the contamination out there and at this point are possibly facing a very large cost to transport the onsite material to a landfill and then bring in clean fill. This was not budgeted into the project but we will do what we need to, to comply with your concerns."

> hard for the Court to conclude that there were damages to Lowe's.
>
> I make these comments because my reading of Rule 50 and the cases that have construed Rule 50, as I said yesterday, impose on me an obligation to be clear with the plaintiffs about what I think the problems in their case are.

Trial Tr., Vol. 6 at 60–65 (Jan. 22, 2014).

The Defendants renewed their motion again at the conclusion of Roger Bernstein's testimony. The Court again denied it without prejudice, exercising its discretion to wait until after the jury had been given the opportunity to render a verdict. See Fed. R. Civ. P. 50 (Advisory Comm. Notes, 1991 Amendments).[2] However, the Court also then indicated that "there is not a legally sufficient evidentiary basis for the jury to find in the favor of the plaintiff." Trial Tr., Vol. 9 at 106:9–15 (Jan. 28, 2014). The Court explained its conclusion as follows:

> I do not think there is record evidence sufficient for a jury to find that Lowe's relied on the reports of ASE in doing anything to its detriment in this case.
>
> \*   \*   \*
>
> It is true that Mr. Maddox testified that they relied on the Phase I Report. He did say that. I think he used language like "in its entirety," or words to that effect.
>
> Mr. Bernstein also testified that Lowe's relied on the Report, although he was clear in his testimony that they relied on the Phase I Report, along with all of the other environmental documents that were made available to Lowe's at the time, or that they already had in their possession.
>
> But the fact -- the use of the word "reliance," by itself, doesn't tell us anything about what the consequence of that reliance is.
>
> In other words, when someone says, "I've relied on the conduct of another person or another party," the question is: Relied on them to

---

[2] "Often it appears to the court or to the moving party that a motion for judgment as a matter of law made at the close of the evidence should be reserved for a post-verdict decision. This is so because a jury verdict for the moving party moots the issue and because a preverdict ruling gambles that a reversal may result in a new trial that might have been avoided. For these reasons, the court may often wisely decline to rule on a motion for judgment as a matter of law made at the close of the evidence, and it is not inappropriate for the moving party to suggest such a postponement of the ruling until after the verdict has been rendered."

6

> do what?
>
> And on this record, the evidence is clear. There is no evidence that Lowe's would not have purchased this property, had they known the real facts.

Id. 106:16–107:22. With respect to the other items of damage advanced by Chartis, including the argument that Lowe's would have budgeted for remediation differently, the Court concluded that "either there is no causal link that ties the item of damage back to any alleged breach by ASE, or . . . there isn't any way for the jury to attach a dollar figure to that item of damage that isn't speculative."[3] Id. 110:23–111:2. The Court's conclusions extended equally to the breach of contract and negligence claims.

Chartis makes two arguments in opposition to the present motion. First, and for the first time, it argues that the burden of proving causation must shift to Defendant ASE because ASE's negligence created an "evidentiary void" on that issue. Second, Chartis argues again that the evidence in the record is sufficient to submit the questions of causation and damages to a jury.

### A. Burden of Proving Causation

In support of its argument that ASE bears the burden of proving (or dis-proving) causation in this case, Chartis relies on a line of decisions in which California courts have held that a jury may decide the question of causation in the absence of any evidence if the defendant's negligence made it "impossible" for the plaintiff to prove causation. See Galanek v. Wismar, 68 Cal. App. 4th 1417, 1426 (1999) ("[W]hen there is a substantial probability that a defendant's negligence was a cause of an accident, and when the defendant's negligence makes it impossible, as a practical matter, for plaintiff to prove proximate causation conclusively, it is more appropriate to hold the defendant liable than to deny an innocent plaintiff recovery, unless the defendant can prove that his negligence was *not* a cause of the injury.") (quotations and citations omitted).

In Galanek, the plaintiff brought a legal malpractice claim based on her attorney's failure to preserve crucial evidence in her negligence and products liability suit – the car she had been

---

[3] See Bowman v. Wyatt, 186 Cal. App. 4th 286, 314 (2010) (quoting Showalter v. W. Pac. R.R. Co., 16 Cal. 2d 460, 471 (1940) ("[E]vidence 'which leaves the determination of . . . essential facts in the realm of mere speculation and conjecture is insufficient.'")).

7

driving in when she was injured. The trial court granted defendants' motion for nonsuit following plaintiff's opening statement, on the ground that plaintiff lacked proof that the attorney's negligence caused her to lose a meritorious action against the manufacturer. The Court of Appeal reversed, holding that plaintiff had alleged sufficient facts in her opening statement to state a prima facie case of causation so as to shift the burden of proof to defendants to establish that the attorney's negligence did not cause plaintiff to lose a meritorious products liability claim. The court reasoned that the attorney's negligence in failing to preserve the car was what made it impossible for her to prove causation, so that as a matter of public policy it was more appropriate to hold defendants liable than to deny plaintiff recovery, unless defendants could prove that the negligence did not damage plaintiff. Galanek, 68 Cal. App. 4th at 1425-28. The court concluded that, as a matter of public policy, a defendant "cannot be insulated from personal liability by the very act of professional negligence that subjects him to liability." Id. at 1428.

In Haft v. Lone Palm Hotel, 3 Cal. 3d 756, 771 (1970), a father and son drowned at a motel pool that lacked a lifeguard and other safety requirements that were required by statute. Because no one witnessed the drowning, the defendants argued that the plaintiff had failed to adduce evidence of causation. The California Supreme Court held that, given the evidence and allegations, the burden had shifted to the defendants "to absolve themselves if they can." Id. at 772. The court found that the "evidentiary void" resulted "primarily from defendants' failure to provide a lifeguard to observe occurrences within the pool area." Thus, "[t]o require plaintiffs to establish 'proximate causation' to a greater certainty . . . would permit defendants to gain the advantage of the lack of proof inherent in the lifeguardless situation which they have created." Id.

These authorities do not apply here. Chartis argues that ASE breached its professional duty of care in drafting the Phase I assessment, and that its report failed to disclose that there was a potential need for remediation on the Arnold Way site. The question is whether Lowe's would have done anything differently if the Phase I report contained this information. Even assuming for the sake of argument that ASE was negligent or breached its contract in failing to disclose this information, nothing it did prevented Chartis from obtaining evidence of damages causation, if there was any evidence to be found. The core question is whether Lowe's would have acted

8

differently if had different information; Lowe's witnesses did not testify that they would have. Thus, the "evidentiary void" in this case is not the product of ASE's conduct, but of the lack of testimony and evidence from Lowe's.

Chartis also argues that its position of limited information as a subrogee to Lowe's requires the Court to shift the burden to ASE for equitable reasons. Chartis cites no authority for this proposition, and the Court is not persuaded by the argument.

### B.     Sufficiency of the Evidence

In the alternative, Chartis argues that the evidence it presented at trial was, in fact, sufficient for a finding that ASE caused Lowe's damages. Chartis identifies four categories of damages from which a jury could conclude that the remediation costs were damage caused by ASE: (1) Lowe's could have walked away from the deal; (2) Lowe's could have negotiated a lower price; (3) Lowe's could have budgeted for the cleanup costs; and (4) Lowe's could have sought an extension of the due diligence period. None of these were supported by competent evidence, and Chartis' arguments as to each fail as a matter of law.

Chartis' first argument is that there was sufficient evidence for a jury reasonably to conclude that Lowe's would not have purchased the property had it known of the risk of contamination. In support of this argument, Chartis relies on the following evidence: Lowe's waived its due diligence period after it received the Phase I assessment, and Lowe's had secured prior extensions of that period in order to allow the Phase I assessment to conclude; and Bernstein testified that Lowe's had, in the past, incurred costs in order not to go through with a property purchase "just for the simple reason that they didn't want to do a project there anymore," Trial Tr., Vol. 9 at 55:9–13.

Neither piece of evidence supports Chartis' position. That Lowe's waited for the Phase I report to waive the due diligence period is evidence that Lowe's wanted the information in the Phase I report prior to closing, but it says nothing about what Lowe's might have done had it known the Phase I report was inaccurate.[4] On the question of whether Lowe's would have

---

[4] Indeed, Chartis itself points out that Lowe's required Phase I environmental reports for a number of reasons. One such reason was to preserve its "innocent-purchaser" defense to contamination

9

1   purchased the property anyway, Chartis presented no evidence at all. The evidence showed that
2   the decision whether to purchase the site would have been made by Lowe's Real Estate Group,
3   and Tom Maddox -- the only member of that group to testify -- testified that it was not his decision
4   to make. See Trial Tr., Vol. 3 at 114:17–21; Vol. 9 at 15:21–16:5. Whoever's decision it was did
5   not testify.

6   The fact that Lowe's has sometimes decided not to purchase a property on other occasions,
7   even after making a deposit, is not evidence that it would have acted any differently with respect
8   to the Arnold Way property. In fact, to the extent the evidence points in any direction, it actually
9   points the other way. When Plaintiff's counsel asked Bernstein if he was surprised that the site
10  required remediation, Bernstein responded "no." Plaintiff's counsel asked again: "Really?," and
11  Bernstein responded again, "no." Id. at 56:5–9. This hardly supports an argument for detrimental
12  reliance.

13  The evidence also suggests that the $1.05 million remediation cost was not a significant
14  cost to Lowe's, much less something that would have killed the deal. In the different context of
15  forfeiting a million dollar deposit, Bernstein testified that "in the big scheme of things, this was a
16  very expensive project and that would be a very small percentage." Trial Tr., Vol. 9 at 54:11–16
17  (Jan. 28, 2014). Plaintiff's counsel again asked: "Q. So are you saying that Lowe's doesn't -- does
18  or doesn't consider a million dollars to be a significant cost? A. Does not. Q. Does not consider a
19  million dollars to be a significant cost. A. No." Id. at 55:1–7. There is no reason to think that
20  Lowe's would have reacted differently here.[5]

---

discovered during redevelopment, a purpose that Chartis' expert witness testified is typical of Phase I clients. Trial Tr., Vol. 4 at 103:12–20 (Jan. 16, 2014). Chartis has failed to point to any evidence suggesting that Lowe's did not get what it sought with respect to the "innocent-purchaser" defense.

[5] Paradoxically, Chartis opened the trial by promising the jury that it would *not* make the argument that Lowe's would not have purchased the property:

> Now, are we saying that Lowe's would not have purchased the property had they known that there was going to be a million-dollar cleanup a year later when they were developing? No, we're not saying that.

10

1      Second, Chartis argues that it presented sufficient evidence at trial for a jury reasonably to
2 conclude that Lowe's would have negotiated a lower price for the property had it known of the
3 risk of contamination. The negotiation of a lower price would have required both buyer and seller
4 to reach agreement on a particular price, and for Chartis to identify the difference between that
5 price and what Lowe's actually paid. But there was no evidence that such a deal would have been
6 possible, much less desirable. Chartis did adduce evidence that Lowe's sometimes negotiates with
7 sellers to transfer the risk of contamination. Trial Tr., Vol. 9 at 30:15-21, 30:24-31:8. But there is
8 no evidence in the record that it would have done so, or that it desired to do so, with respect to the
9 Arnold Way property. In fact, Maddox testified that he personally could not recall any such
10 negotiation *ever* occurring with respect to any property. Trial Tr., Vol. 3 at 107:10–13 (Jan. 15,
11 2014). As discussed above, Bernstein testified that he was not aware of anything suggesting that
12 Lowe's would have done anything differently as a result of incurring the remediation costs. Trial
13 Tr., Vol. 9 at 91:21–92:5 (Jan. 28, 2014). And, as little evidence as there was regarding the
14 buyer's desire or ability to renegotiate, there was even less as to the seller, since no employee of
15 the former property owner testified.

    On this record, no reasonable jury could have concluded that Lowe's would have
renegotiated the purchase price at all, much less that it would have done so for a particular
amount. In fact, given that Lowe's representatives testified that they were aware of the possibility
of further contamination, it is equally possible that the price already reflected the risk of clean-up.

    Third, Chartis argues that it presented sufficient evidence at trial for a jury reasonably to
conclude that Lowe's would have "obtained an estimate of anticipated cleanup costs to include in
its budget for the Site, had ASE adequately advised Lowe's before closing on escrow." ECF No.

---

> But what we are saying, and what you will hear testimony saying, is that maybe they would have tried to negotiate a lower purchase price; maybe they would have extended their due diligence period and done something different.

Trial Tr., Vol. 2 at 42:5–12 (Jan. 14, 2014).

11

1  214 at 10. At trial, Chartis did present evidence that Lowe's normally sought estimates of
2  anticipated cleanup costs to include in its final budget for a property. Trial Tr., Vol. 9 at 34:17–
3  22; 48:7–10 (Jan. 28, 2014). And Chartis also presented evidence that Lowe's did not budget in
4  advance for clean-up at the Arnold Way site. See Tr. Exh. 54 (Lowe's "did not cause the
5  contamination out there and at this point are possibly facing a very large cost to transport the
6  onsite material to a landfill and then bring in clean fill. This was not budgeted into the
7  project . . . ."). But the cost of the act of budgeting is different from the cost of the expense itself.
8  Even assuming for the sake of argument that losing the ability to budget something in advance is a
9  compensable item of damage, Chartis presented no evidence on what the value of that item was to
10 Lowe's, and the jury would have been left to speculate.

11 Fourth, Chartis argues that it presented sufficient evidence at trial for a jury reasonably to
12 conclude that Lowe's would have sought an extension of the due diligence period. Chartis
13 presented evidence at trial that Lowe's had extended its due diligence period with respect to this
14 property previously in order to wait for the Phase I assessment. Chartis argues that ASE's
15 negligence "denied Lowe's this ability to avoid its cleanup costs at issue." ECF No. 214 at 11.
16 Presumably Chartis takes this position because it feels that Lowe's would have negotiated to shift
17 the remediation costs to the seller of the property. As set forth above, however, there is no
18 evidence that it could have done so, or that it even wanted to do so. Again, Chartis is inviting a
19 jury to speculate.

20 In short, the trial record is devoid of any evidence concerning what Lowe's would have
21 done differently if it had known early of the contamination at the Arnold Way property. Lowe's
22 might have purchased the property anyway, in light of the minimal addition to total costs that
23 remediation represented; it might have negotiated a lower price, if it could, though how much
24 lower no one can say; and it might have decided not to purchase the site at all. Which of these
25 actions it *would* have taken, and what the dollar value is of any of them, are purely speculative.
26 There is therefore no evidence from which a jury could reasonably conclude that Lowe's suffered
27 any of the damages Chartis seeks to recover as Lowe's subrogee as a result of ASE's conduct.
28

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS ASE's renewed motion for judgment as a matter of law.

The parties shall meet and confer and submit a jointly proposed form of final judgment consistent with the terms of this Order within fourteen days.

**IT IS SO ORDERED.**

Dated: June 16, 2014



JON S. TIGAR
United States District Judge